FILED

2012 Apr-02  AM 08:55
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **JAMES AND JAMIE ENNIS,** individuals, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No.:** |
| **MIDLAND FUNDING, LLC, a corporation; MIDLAND CREDIT MANAGEMENT, INC.,  a corporation;** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## <u>COMPLAINT</u>

**COME NOW** the Plaintiffs, by and through counsel, and for their Complaint against the Defendants state as follows:

1.   This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act[1]  (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiffs' personal and financial privacy by the Defendants and their agents in its illegal efforts to collect a consumer debt from Plaintiffs.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

## JURISDICTION

2.  Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of their specific conduct with Plaintiffs in Alabama.

3.  Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332).

## VENUE

4.  Venue is proper as Plaintiffs live in this judicial district, the events took place in this judicial district, and all Defendants do business in this judicial district.

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

5.  Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

6.  Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

7.  Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

8.     15 USC § 1692 is entitled "Congressional findings and declaration of

purpose" and it states as follows:

(a)     There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)     Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)     **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)     Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)     It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## PARTIES

9.     Plaintiffs James and Jamie Ennis (hereinafter "Plaintiffs") are natural persons

who are residents of Alabama, and are "consumers" as that term is defined by

15 U.S.C. § 1692a(3).  They live in this judicial district.

10.     Defendant Midland Funding, LLC, ("Defendant" or "Midland[2]") is a foreign debt collection firm that engages in the business of debt collection in Alabama (including this judicial district).  It is a debt collector under the FDCPA.  It is incorporated in Delaware and has its principal place of business in California.

11.     Defendant Midland Credit Management, Inc., ("Defendant" or "Midland") is a foreign debt collection firm that engages in the business of debt collection in Alabama (including this judicial district).  It is a debt collector under the FDCPA.  It is incorporated in Kansas and has its principal place of business in California.

12.     In the present case, Defendants Midland Funding, LLC and Defendant Midland Credit Management, Inc. operate as agents for each other and all actions taken by one entity are done on behalf of the other entity.

13.     Defendant Midland Funding, LLC and Defendant Midland Credit Management, Inc. are hereinafter referred to collectively as "Midland."

14.     Defendant Midland Funding, LLC, upon information and belief, allegedly buys defaulted consumer debt.

---

[2] "Midland Funding, LLC" or "Midland Credit Management, Inc." means Midland directly or through its debt collectors, employees and agents that took any collection action against Plaintiffs.

15.   Defendant Midland Funding, LLC, assigns all collection activities for the defaulted debt to Midland Credit Management, Inc.

16.   These companies are operated from the same location, with the same ownership, and are otherwise treated as one company.

### Factual Allegations

17.   Plaintiff James Ennis allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

18.   Defendant Midland began repeatedly calling to Plaintiffs' home.

19.   Plaintiff James Ennis works long hours and was not at home when Defendant Midland called.

20.   Plaintiff Jamie Ennis told Defendant Midland to only call after her husband James Ennis would be home from work.

21.   Defendant Midland, who apparently used offshore collectors who went by the names of John, Andy, Nick, Sam, and others, refused to call when Plaintiff James Ennis was at home.

22.   Defendant Midland informed Plaintiff Jamie Ennis that they would not call in the evening because they did not work in the evening.

23.   Defendant Midland repeatedly told Plaintiff Jamie Ennis that she was responsible for paying the debt.

24.  Both Plaintiffs are protected under the FDCPA as both have been alleged by Defendant Midland to owe the debt.

25.  Defendant Midland called Plaintiffs on Sundays.

26.  Plaintiff Jamie Ennis told Defendant Midland that for the Plaintiffs, Sundays were not days to conduct business or work due to Plaintiffs' religious beliefs.

27.  Plaintiff Jamie Ennis told Defendant Midland to not call on Sundays.

28.  Defendant Midland, through a collector believed to operate under the name or alias of "Sam" told Plaintiff Jamie Ennis that he did not care about her religious beliefs on Sunday and that Defendant Midland would call any day of the week that it wanted.

29.  Defendant Midland stated that it would continue to call on Sundays since it could not reach Plaintiff James Ennis during the week when Defendant Midland wanted to call.

30.  It is the corporate policy of Defendant Midland to ignore and mock the religious beliefs of consumers in Alabama and the rest of the country.

31.  Defendant Midland would alternate between telling Plaintiff Jamie Ennis that she was responsible for the debt and then it would tell her that Defendant Midland could not discuss the account with her since it was only her husband's account.

32.   Defendant Midland informed Plaintiff Jamie Ennis that this negative account would remain on Plaintiff James Ennis' credit report for 14 years.

33.   Plaintiff Jamie Ennis said she thought it could only be there for 7 years but she was told by Defendant Midland that it was 14 years.

34.   Defendant Midland accused Plaintiff Jamie Ennis of lying about her husband's work schedule.

35.   Defendant Midland told Plaintiff Jamie Ennis that she did not have a husband.

36.   Defendant Midland told Plaintiff Jamie Ennis that she had created a false identity of "James Ennis" or that she had stolen the identity of a "James Ennis".

37.   Defendant Midland accused Plaintiff Jamie Ennis of fraudulently opening this account with no intent to pay for it.

38.   Defendant Midland used auto dialers or other computer dialing equipment to repeatedly call Plaintiffs' home, sometimes multiple times a day.

39.   Often when Plaintiff Jamie Ennis answered the phone or indicated that she was the wife of Plaintiff James Ennis, Defendant Midland would hang up the phone without saying anything to Plaintiff Jamie Ennis.

40.   Defendant Midland has used abusive, rude, and insulting language towards Plaintiffs.

41.     Defendant Midland has screamed at Plaintiffs.

42.     When Plaintiffs have requested "validation" of the debt so they would have some documentation on what the debt was for, Defendant Midland has refused to provide it.

43.     On at least one occasion, Defendant Midland laughed at a request for validation and said it would not be provided as the time was up for that and Plaintiffs had to pay this debt.

44.     This debt is allegedly for a Dell computer but at least some, if not all, of the charges are not Plaintiffs' charges.

45.     Defendant Midland has full knowledge of what it is doing by conducting illegal collection activities in Alabama.

46.     The conduct of the Defendant Midland has proximately caused Plaintiffs past and future monetary loss, past and future damage to Plaintiffs' credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

47.     It is a practice of the Defendant Midland to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

48.     Defendant Midland knows its conduct is wrong.

49.  All actions taken by employees, agents, servants, or representatives of any type for the Defendant Midland were taken in the line and scope of such individuals' employment, agency or representation.  This includes all actions taken by Midland Funding, LLC and Midland Credit Management, Inc. which were taken on behalf of each other and within the line and scope of all such agency relationships.

50.  All actions taken by the Defendant Midland were done with malice, were done willfully, and were done with either the desire to harm Plaintiffs and/or with the knowledge that their actions would very likely harm Plaintiffs and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

51.  Defendant Midland has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or consumer reports and as such Defendant Midland is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

52.  Defendant Midland is liable to Plaintiffs through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection

employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

## SUMMARY

53.   All of the above-described collection activities against Plaintiffs by Defendant Midland were made in violation of the FDCPA, including (but not limited to) §1692c(a)(1), 1692d, 1692d(2), 1692d(5), 1692d(6), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

54.   The above-detailed conduct by the Defendant Midland of harassing Plaintiffs in an effort to collect this debt was also an invasion of Plaintiffs' privacy and resulted in actual damages to the Plaintiffs.

55.   This series of abusive collection actions by Defendant Midland caused Plaintiffs stress and anguish.

56.   Defendant Midland 's attempts to collect this debt from Plaintiffs and refusal to stop violating the law is an invasion of Plaintiffs' privacy and Plaintiffs' right to be left alone.

57.   Plaintiffs have suffered actual damages as a result of these illegal actions by Defendant Midland in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative

emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## NEGLIGENT AND WANTON HIRING AND SUPERVISION

58.   Defendant Midland negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and are thereby responsible to the Plaintiffs for the wrongs committed against Plaintiffs and the damages suffered by Plaintiffs.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

59.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.   The acts and omissions of Defendant Midland constitute numerous and multiple violations of the FDCPA with respect to the Plaintiffs, including (but not limited to) §1692c(a)(1), 1692d, 1692d(2), 1692d(5), 1692d(6), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

61.   As a result of Defendant Midland's violations of the FDCPA, Plaintiffs are entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## COUNT II.

## INVASION OF PRIVACY

62.   Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

63.   Alabama law recognizes Plaintiffs' right to be free from invasions of privacy and Defendant Midland violated Alabama state law as described in this Complaint.

64.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

65.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

66.     Defendant Midland intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

67.     Defendant Midland intentionally, recklessly, and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' right to privacy.

68.     Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, private concerns or affairs, and private financial information.

69.     The conduct of Defendant Midland, in engaging in the above-described illegal collection conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by Defendant Midland which occurred in a way that would be highly offensive to a reasonable person in that position.

70.     The intent and design behind the scheme of Defendant Midland was to go beyond the bounds of reasonable debt collection in order to harass Plaintiffs and Defendant Midland was successful in doing so.

71.     As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendant Midland.

72.     All acts of Defendant Midland were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Midland is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

73.     Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

74.     Defendant Midland's collectors are allowed and encouraged to break the law in order to collect debts.

75.     Defendant Midland is aware of the wrongful conduct of its collectors.

76.     Defendant Midland negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiffs, and Defendant Midland is thereby

responsible to the Plaintiffs for the wrongs committed against Plaintiff and the damages suffered by Plaintiffs.

## COUNT IV.

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

77.   All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

78.   Defendant Midland acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiffs as set forth in this Complaint.

79.   Defendant Midland had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiffs and to use reasonable care in dealing with the Plaintiffs.

80.   Defendant Midland violated all of the duties Defendant Midland had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

81.   It was foreseeable, and Defendant Midland did in fact foresee it, the actions of Defendant Midland would lead and did lead to the exact type of harm suffered by Plaintiffs.

82.     Defendant Midland acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiffs as set forth in this Complaint.

83.     Defendant Midland invaded the privacy of Plaintiffs as set forth in Alabama law.

84.     Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

85.     As a result of this conduct, action, and inaction of Defendant Midland, Plaintiffs have suffered damages as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiffs pray that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiffs**


**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS CAUSE.**

/s/ John G. Watts
**Attorney for Plaintiffs**



**Serve defendants via certified mail at the following address:**

Midland Funding, LLC
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104

Midland Credit Management, Inc.
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104